**SIGNED this 15th day of March, 2011.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCHOTT | ) | Case No. 10-54276 |
| | ) | |
| | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM DECISION**

A creditor, International Bank of Commerce ("IBC"), has filed an objection to the debtor's claim of homestead exemption. Another creditor, Lance P. Welch, has joined IBC's objection. The debtor has claimed the following real property as exempt pursuant to the state homestead exemptions allowed in the state of Texas, pursuant to 11 U.S.C. § 522(b)(3)(A): 1) House and tracts located at Goose Island Lake Estates, Tracts 1-5, 1204 8th Street, Rockport, Texas 78723, having an asserted value of $950,000; 2) Lots 1-24 on Conlin Drive contiguous to the Goose Island Lake Estates, Tracts 1-5, Rockport, Texas 78732, and having an asserted value of $480,000. IBC has objected on the following grounds: 1) the designation includes one or more non-contiguous lots; 2) the designation includes one or more properties having aggregate acreage in excess of 10 acres (*i.e.*, the property is not a rural homestead, which would permit the

debtor to claim 100 acres); 3) the properties were not previously designated or used as homestead property by Schott, as required by Tex. Prop. Code 41.005(b)[1]; 4) the properties are not currently being used for homestead purposes; 5) the debtor does not actually occupy the property as his homestead; 6) the debtor does not have the requisite intent or design to use the property as his business homestead; 7) the debtor does not have the present intent to use the premises as his homestead in the future; 8) the debtor has not established concurrent usage and intent to claim the property as his homestead; and 9) the debtor has previously agreed that some or all of the properties listed as exempt are not his homestead.

At the hearing on this matter, the debtor claimed that the property listed as exempt constituted a rural, rather than an urban, homestead. He also maintained that, while he is not currently living on the property, he has not abandoned it and has always intended that the property would remain his homestead until such time as he is able to return.

*Legal Analysis*

The property at issue in this case consists of a golf course and club house. The golf course is bisected by a road which is owned by Aransas County. When the debtor purchased the property in 2006 he moved into the club house and resided there until moving to Austin in 2009 to begin construction on a spec house located in Austin. The debtor claims that the Aransas property is rural, while the objectors claim that it is urban. The Texas Property Code lays out the requirements for an urban homestead as follows:

> (c) A homestead is considered to be urban if, at the time the designation is made, the property is:
> (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
> (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality:

---

[1] It should be noted that "[n]o written designation of homestead is required." *In re Howard*, 65 B.R. 498, 501 (Bankr. W.D. Tex. 1986) (citing Tex. Prop. Code Ann. § 41.022 (Vernon 1984)).

       (A) electric;
       (B) natural gas;
       (C) sewer;
       (D) storm sewer; and
       (E) water.

Tex. Prop. Code § 41.002. The Aransas County property is rural property because, according to the evidence taken at the hearing, it does not receive police protection from a municipality. *See In re Dietz*, 2011 Bankr. LEXIS 522, at *15 (Bankr. E.D. Tex. Feb. 16, 2011) (noting that section 41.002(c) a property must receive both fire *and* police protection from a municipality to be considered urban and concluding that because the property at issue only received law enforcement protection from the County Sheriff's Office, the property could not be considered urban, and further stating that due to the lack of police protection from the municipality, "no analysis of utility services is required"); *Rodriguez v. Ramirez (In re Ramirez)*, 2011 Bankr. LEXIS 72, at *19-20 (Bankr. S.D. Tex. Jan. 5, 2011) (interpreting section 41.002(c) of the Texas Property Code to mean that a property must receive both police and fire protection from a municipality to qualify as urban and concluding that Sheriff's services do not constitute police services within the meaning of section 41.002(c)).

      Having found that the Aransas property is rural, the next question concerns whether the property qualifies as the debtor's homestead. The general Texas homestead rules with respect the burden of proof are as follows:

> Under Texas law, a claimant may establish homestead rights in his land by showing both (i) overt acts of homestead usage and (ii) the intention on the part of the owner to claim the land as a homestead. Once the claimant has made a prima facie case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated. Bankr. R. 4003(c)…

*Graham v. Kleb*, 2008 U.S. Dist. LEXIS 6495, *5-6, *8-9 (S.D. Tex. Jan. 29, 2008) (citations omitted). The debtor bears the burden of establishing that a particular property qualifies as his homestead. When the debtor actually resides on the property, "a court generally need not investigate intent … because that is 'the most satisfactory and convincing evidence of intention.'" *Painewebber Inc. v. Murray*, 260 B.R. 815, 822-823 (E.D. Tex. 2001) (citing Texas

case law). Once the debtor establishes that the property qualifies as his homestead, the burden shifts to the creditor to disprove the property's homestead status. *See Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983) ("The initial burden of establishing that property is homestead property is on the claimant of the protection … Once the claimant has established his homestead, the burden shifts to the creditor to disprove its continued existence … The burden amounts to a presumption that the homestead continues to exist until its termination is proved."); *Duran v. Henderson*, 71 S.W.3d 833, 842 (Tex. App. Texarkana 2002) ("Once a homestead claimant has established the homestead character of the property, the burden shifts to the creditor to disprove the continued existence of the homestead."). The determination of whether property constitutes a debtor's homestead "presents a fact-intensive inquiry that considers the owner's concurrent usage and intent to claim the property as a homestead." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 445 (Tex. App.—Austin 2006).

The debtor purchased the property at issue in 2006. He no longer resides in Aransas County, but has claimed the property located there as his rural homestead. He resided on a portion of the property at one time. The property consists of two parcels of land bisected by a public road that the County owns. The western parcel of land includes part of the golf course as well as the clubhouse where the debtor resided from 2006 until he moved to Austin in 2009. The eastern parcel consists of the remainder of the golf course. The total acreage of the property is fewer than 200 acres. A rural homestead may consist of "not more than 200 acres, which may be in one or more parcels, with the improvements thereon." § 41.002(b). Thus, a rural homestead may include non-contiguous tracts. *See, e.g., Perry v. Dearing (In re Perry)*, 345 F.3d 303, 318 (5th Cir. 2003). However, for non-contiguous tracts to qualify as part of a rural homestead, one of the tracts must be used as a residence and the other tract must be used for the comfort, convenience or support of the family. *See id.* at 318, n. 22 (if part of rural property is non-contiguous to property on which the home is situated, then, to constitute part of the homestead, the separate land must be "used principally for the purposes of a home"); *In re Baker*, 307 B.R. 860, 863 (Bankr. N.D. Tex. 2003) ("If the party claiming rural homestead protection resides on a separate tract of land, the uninhabited property must be used in connection with the home tract for the comfort, convenience, or support of the family."); *Webb,* 263 B.R. 788, 792 (Bankr. W.D.

Tex. 2001) ("Both the express language of § 41.002(b) and the case law make it clear that property separated from the tract where the residence is located, to be included in a rural homestead, must be 'used for home purposes'").

Before discussing the homestead character of the two parcels of land at issue here, the court must first determine whether these parcels are contiguous. The court finds that the two tracts of land claimed by the debtor as his rural homestead are non-contiguous. They are separated by a road that is owned by Aransas County, not the debtor. Black's Law Dictionary defines contiguous as "touching at a point or along a boundary; adjoining." BLACK'S LAW DICTIONARY (9th ed. 2009). In *Broun v. Texas & N. O. R. Co.*, the Texas Court of Appeals, interpreting language in a deed, distinguished between the terms "adjoining" and "adjacent." 295 S.W. 670 (Tex. Civ. App. 1927). The court stated, "[t]hat which is adjacent may be separated by some intervening object; that which is adjoining must touch in some part. According to the more approved definitions, the word 'adjoin' or 'adjoining' carries with it the idea of actual contact and touch." *Id*. at 674. (internal citation omitted). *See also United States v. Hunter*, 80 F.2d 968, 969 (5th Cir. 1936) (noting, in the context of the Tariff Act, that "[e]tymologically and generally contiguous means touching together, in contact with"); *Joaquin Independent School Dist. v. Fincher*, 510 S.W.2d 98, 103 (Tex. Civ. App. Tyler 1974) (stating, in the context of interpreting the Texas Education Code, that "the phrase 'contiguous school districts' … mean[s] districts which are in such physical contact or proximity that no intervening space exists between their touching boundaries").

In *International & G. N. R. Co. v. Boles*, the Texas Court of Civil Appeals examined whether property bisected by a public road was nonetheless contiguous. 161 S.W. 914, 915 (Tex. Civ. App. 1913). The court concluded that because the property owner still held title to the land over which the right of way passed (the county merely possessed an easement), the parcels were, in fact contiguous. *Id. See also Youngblood v. Youngblood*, 124 Tex. 184 (Tex. 1934) (concluding that land on one side of a road used by the public was contiguous to land on the other side of the road where title to the land over which the road passed was held by the owner of the adjoining lands); *In re Jackson*, 169 B.R. 742 (Bankr. N.D. Fla. 1994) (finding land bisected by a public to be contiguous for homestead purposes because the debtor owned the land over

which the road passed, and noting that if title to the roadway (as opposed to just an easement) had actually been conveyed to a third party, contiguity would have been destroyed). Here, the debtor does not own the land beneath the road that bisects his property. Accordingly, the property should not be considered contiguous.

Having found the property to be non-contiguous, the next question becomes what portion, if any, of the Aransas property may the debtor claim as his exempt rural homestead? "'Homesteads are favorites of the law, and are liberally construed by Texas courts.'" *Graham v. Kleb*, 2008 U.S. Dist. LEXIS 6495, at \*11 (S.D. Tex. Jan. 29, 2008) (quoting *Perry*, 345 F.3d at 316 ). The debtor has satisfied the burden of establishing that the western parcel of land with the club house on it was his rural homestead because he actually resided on that tract for a period of time. That the debtor no longer lives on the property does not preclude a finding of entitlement to claim the property as a homestead, provided the evidence shows that the property was previously the debtor's homestead and that he has not since abandoned it. *In re Leonard*, 194 B.R. 807, 809-10 (Bankr. N.D. Tex. 1996).

Here, the evidence supports a finding that the debtor lived in the club house on the western parcel from the time he purchased it in 2006 until he moved to Austin in 2009. "Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact." *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Tex. App. El Paso 1997). Furthermore, "[w]hile homestead claimants normally do have to demonstrate intent [to designate land as a homestead], property owners who reside on and use their property do not." *Sifuentes v. Arriola*, 2009 Tex. App. LEXIS 2849, at \*9 (Tex. App. Austin Apr. 22, 2009); *see also In re Kennard*, 970 F.2d 1455, 1459 (5th Cir. 1992) (holding bankruptcy court had abused its discretion by finding the debtor lacked the intent to claim property as a homestead where the debtor's "occupancy and use of his home and the surrounding acreage were unquestioned"). By establishing that he lived in the club house and used it as his home, the debtor established that the western parcel of the property was his homestead. *See Norra v. Harris County (In re Beckwith)*, 412 B.R. 782, 792 (Bankr. S.D. Tex. 2009) (concluding that "[b]y establishing residence, [the debtor] ha[d] met her burden of demonstrating overt acts of homestead usage and the intent to claim the land as a homestead"); *In re Villarreal*, 401 B.R. 823, 832 (Bankr. S.D.

Tex. 2009) (finding debtors had established the homestead nature of property where, despite the fact that the property consisted of a restaurant and ballroom, the debtors had "set up a bedroom in the restaurant portion of the building, concealed behind a black curtain," and stating that the debtors' "actual use of the property as a homestead [was] sufficient to establish the homestead."). Additionally, by establishing his residence in the club house, the debtor successfully established the homestead character of the entire western parcel of land on which the club house sits. *See Sifuentes*, 2009 Tex. App. LEXIS 2849, at *9 (noting that courts "presume that one who owns and resides on a lot makes the whole lot his homestead.").[1]

The eastern parcel of the Aransas property requires a different analysis. Because that parcel is not contiguous to the western parcel (it is separated by a road owned by the county), the debtor bore the burden of establishing that the eastern parcel was used "principally for the purposes of a home." *Perry*, 345 F.3d at 318, n. 22. In *Painewebber, Inc. v. Murray* the district

---

[1] In their pleading the objectors alluded to a possible claim of a business homestead. That the debtor may have conducted a business on the parcel of land on which he resided does not extinguish the rural homestead character of the property. The Fifth Circuit has stated the following with respect to this issue:

> Neither the Texas Property Code, nor the Texas Constitution, bar a rural resident from operating a business, per se, on the property on which he resides. Because the 'business' or 'calling' of rural residents has traditionally been agricultural, the Texas Supreme Court has not yet been presented with the opportunity to pass upon a case that involves (a) a rural resident, who claims (b) rural property, that is (c) on the same tract as his residence and (d) is used for non-agricultural business purposes, as part of his homestead. *But see*, *Hollifield v. Hilton*, 515 S.W.2d 717, 717-721 (Tex. Civ. App. 1974), writ ref'd, n.r.e. (holding that where appellants owned and resided upon contiguous 60-acre rural farm and used 18 acres as a mobile home park, 18-acre tract was part of the rural homestead); *In re Buie*, 287 F. 896 (N.D. Tex. 1923), aff'd, *Rockhold v. Buie*, 293 F. 1021 (5th Cir. 1923) (concluding that land, contiguous to the debtor's residence, on which he ran a general store and public blacksmith shop, was exempt rural homestead); In the absence of a clear statement expressly limiting the scope of the rural homestead to property used for home or agricultural purposes, we cannot agree that the operation of a business, without more, necessarily forfeits a rural homestead interest."

*Perry v. Dearing (In re Perry)*, 345 F.3d 303, 318 (5th Cir. Tex. 2003).

court for the Eastern District of Texas described the rural homestead test for contiguous and non-contiguous property as follows:

> [I]n cases where the rural homestead consists of separate tracts of land, the mere establishment of a home on one tract may be insufficient to impress homestead character on the detached property….With a contiguous tract, one can logically extend the establishment of a home and the activities pertaining to the home to the outer boundaries of that tract. Only an imaginary line separates the residence tract from the contiguous property. Hence, there is a presumption that such a tract is used for the purposes of a home. With a noncontiguous tract, more than an artificial boundary separates it from the home. Unless the noncontiguous tract somehow supports the home, it has no nexus with the residence tract and is nothing more than another piece of property. Thus, a claimant must demonstrate distinct evidence that the noncontiguous piece of property is associated with the residence tract and that it is more than a separate plot of land.

260 B.R. 815, 830 (E.D. Tex. 2001). The debtor has not met his burden with respect to the eastern parcel of the property. It has long been the rule in Texas that, to establish a non-contiguous tract as part of a rural homestead, a debtor must establish the homestead character of the non-contiguous tract. The bankruptcy court for the Eastern District of Texas, quoting *Brooks v. Chatham*, 57 Tex. 31, 1882 WL 9451, at *2-3 (Tex. 1882), discussed determining the homestead status of non-contiguous property as follows:

> 'It would be impracticable to lay down a general rule as to what shall constitute a designation to homestead use, in all cases, sufficient to throw around two or more separate parcels of land the protection given by the constitution to the rural homestead; but there must be something more than mere ownership, coupled with an intention at some time to use in connection with the parcel upon which the home stands, to protect other and detached parcels of land. Such designation must consist in the use of the detached parcel, or parcels, in connection with the home place, or in such preparation so to use as will clearly evidence the intention so to use; but this must vary according to the character of the detached parcel or land, and the purpose to which it is adapted and for which it is intended.
>
> The fact that the head of the family has a parcel of land upon which the family lives, and which thereby becomes entitled to protection as a homestead, cannot attach such character to a detached parcel of land not used for the purposes for which the homestead exemption is given[.]'

*In re Palmer*, 391 B.R. 386, 390-91 (Bankr. E.D. Tex. 2008). Accordingly, the debtor bore the burden of establishing that he intended to claim the non-contiguous eastern parcel (the golf

course) as his homestead and that he committed overt acts of rural homestead usage on the property. *Id.*; *see also In re Webb*, 263 B.R. 788, 792 (Bankr. W.D. Tex. 2001) (stating, with regard to property detached from property upon which the family home sits but claimed as part of a rural homestead, that "'[t]here must be some act done which will evince an intention … to use it in some way, in connection with the home place, for the comfort, convenience, or support of the family, or as a place of business for the head of the family.'") (quoting *Brooks*, 57 Tex. 31, 1882 WL 9451, at *2).

Texas courts have never definitively determined what constitutes use "for the purposes of a home." *See Palmer*, 391 B.R. at 391-92. Courts have merely stated that "[i]n order to satisfy the 'use for purposes of a home' requirement, a debtor must show that the non-contiguous property is 'used in connection with the home tract for the debtor's comfort, convenience, or support." *Beckwith*, 421 B.R. at 790. (quoting *In re Baker*, 307 B.R. 860, 863 (Bankr. N.D. Tex. 2003)). With regard to comfort, convenience or support, the *Painewebber* court summarized the state of the law as follows:

> Most cases refer to the need to show that the separate tracts support the family without adequately addressing the kind of evidence that indicates support. While many of them presume that activities like cultivating crops, pasturing cows, or chopping wood constitute evidence of support, a few others suggests that acts on a detached property that contribute to the comfort, enjoyment, or convenience of the residence or the family may also represent distinct enough evidence of a rural purpose. Under this latter, more liberal view, comforting or convenient acts like taking a walk on the detached property or enjoying the property's aesthetic qualities could possible impress a homestead. The two cases espousing this broader interpretation, however, concerned a separate tract that was utilized for sharecropping. Those separate tracts provided a form of support beyond mere aesthetic comfort or convenience. Accordingly, the notion that mere comforting or convenient acts may dedicate a homestead on a detached piece of property resonates less powerfully than one might originally believe.

*Painewebber*, 260 B.R. at 830 (citing Texas cases); *see also Graham v. Kleb*, 2008 U.S. Dist. LEXIS 6495, at *12-13 (S.D. Tex. Jan. 29, 2008) (citing *Painewebber* for summary of case law on homestead usage of non-contiguous tracts). In *Perry*, the Fifth Circuit, collecting cases, noted that "[a] separate parcel has been held to be part of the homestead where proof has been provided indicating that the land had been used as a site for a garage, stable, barn, horse lot, pasture, garden, or playground for the children of the family." 345 F.3d at 318, n. 22.

Here, the debtor testified that he does not play or even enjoy golf. He testified only that he sometimes likes to take walks on the golf course. Furthermore, the evidence tended to show that the debtor never intended to use the eastern parcel as his homestead. Rather, he advertised the property as a resort property, began constructing "bungalows" on the property, and in all respects treated the property as an investment to be monetized and developed into a resort. E-mail exchanges between the debtor and Mr. Welch's office from late August, 2006, regarding the potential establishment of an investment partnership between the debtor and Mr. Welch, show that the debtor did not intend to make the eastern parcel of the Aransas property his homestead; rather, this correspondence supports a finding that the debtor planned to develop the golf course into a resort.

The debtor points to an e-mail from August 29, 2006 wherein he purports to disclaim any interest in creating a partnership (except possibly with regard to the 28 tracts along the golf course), stating that he is merely seeking financing to develop the property as a home for his family. However, this e-mail does not appear to fit within the timeline and subject matter of surrounding and subsequent correspondence presented by the objectors (namely, Mr. Welch) and thus raises some questions regarding its authenticity. E-mails from October, 2006 show that a partnership was, in fact, formed (as an LLC) between Mr. Welch and the debtor to develop the golf course property. In any event, the court found the testimony of Mr. Welch to be more credible with respect to the nature of his relationship with the debtor and the development plan for the golf course. In light of these facts, the debtor's sporadic recreational use of the non-contiguous eastern parcel of the property is insufficient to demonstrate that he used that property for homestead purposes.

This case presents facts that are somewhat similar to those addressed by the bankruptcy court in *In re McCain*, 160 B.R. 933 (Bankr. E.D. Tex. 1993). In *McCain*, the debtor resided on 5.056 acres within a partially platted development which was also owned by the debtor. The development (called Briarwood Acres) was divided into two parcels: one parcel had been platted and some of the lots from that parcel had been sold. The other parcel had not been developed in any way. The debtor resided on a tract of land in the middle of the undeveloped parcel. When she filed for bankruptcy the debtor claimed the entire development (both the undeveloped parcel

containing the tract where she resided and the remaining unsold tracts from the developed parcel) as her homestead. The court concluded that the debtor had clearly established the 5.056 acres on the undeveloped parcel as her homestead because she had been living there. *Id*. at 938-39. Regarding the remainder of the undeveloped parcel, the court concluded that the debtor had not established this property as her homestead. *Id*. at 940. The debtor had testified that she used the land to gather firewood, to hunt and for recreational purposes, but the court found that any such use "had been very minimal." *Id*. The court stated that it was "simply not convinced that the testimony of Debtor and her husband in this regard [was] at all credible." *Id*. The court found that the debtor had not shown an intent to convert the property from development property into a rural homestead. *Id*. at 941. Rather, her actions had demonstrated an intent to retain the property as it was for future development. *Id*. The court reached a similar conclusion with respect to the already partially developed parcel of property, stating that, "Debtor's attempts to demonstrate the overt act needed to convert this property from a commercial development to a homestead were not convincing *Id*. at 940.

    The court did not explicitly state whether the debtor's 5.056 acres were contiguous with the undeveloped portion of the property or whether the undeveloped portion was contiguous with the partially developed portion. The court merely stated that the developed and undeveloped portions were adjacent to one another. *Id*. at 940. Nonetheless, the facts suggested that the debtor's tract was contiguous with the undeveloped portion which was in turn contiguous with the partially developed portion. Where, as here, the property at issue is *not* contiguous to the tract containing the debtor's residence, the case is even stronger for refusing to find homestead usage in debtor's sporadic strolls on the eastern portion of the golf course. *See In re Palmer*, 391 B.R. at 392 (finding evidence insufficient to demonstrate debtor had used non-contiguous property "for the purpose of a home" where debtor's use of the property was sporadic and best classified "in the enjoyment/convenience category of usage"); *In re Dietz*, 2011 Bankr. LEXIS 522, at *19-21 (Bankr. E.D. Tex. Feb. 17, 2011) (finding that "sporadic recreational use of, and the isolated receipt of income from, a non-contiguous tract of land does not, even collectively, create a sufficient nexus to the Debtor's recognized homestead to impress that detached parcel with the

homestead character"). The noncontiguous tracts in the case *sub judice* do not qualify as having been used for a homestead purpose and so do not qualify for exemption.

The debtor did successfully establish the rural homestead character of the western parcel of the property containing the club house. The next question concerns whether the debtor *abandoned* that homestead when he moved to Austin in 2009. "Once acquired, homestead rights are not easily lost. Property may lose its homestead character only by the claimant's death, abandonment, or alienation." *Duran v. Henderson*, 71 S.W.3d 833, 842 (Tex. App. Texarkana 2002). A debtor will be deemed to have abandoned his homestead if he voluntary vacates the premises with the intent never to return. *See Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 715-16 (Tex. App. Tyler 2007) ("'To be an abandonment that would subject such property to seizure and sale, there must be a voluntary leaving or quitting of the residence with a then present intent to occupy it no more as a home . . .'") (quoting *King v. Harter*, 8 S.W. 308, 309 (1888)). The party asserting abandonment of a homestead "has the burden of showing that the homestead claimant moved from the homestead property with the intention of not returning to the property." *McFarland v. Rousseau*, 667 S.W.2d 929, 931 (Tex. App.—Corpus Cristi 1984). Furthermore, "[e]vidence establishing the abandonment of a homestead 'must be undeniably clear' and must show 'beyond almost the shadow, at least of all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." *Sosa v. Long Beach Mortg. Co.*, 2007 Tex. App. LEXIS 4640, at *5 (Tex. App.—Austin June 12, 2007) (internal quotations and citation omitted).

Here, the objectors have not met the evidentiary standard to establish that the debtor abandoned his homestead in Aransas County. It is clear that "[m]ere removal from premises occupied as a homestead, even to another state, does not constitute an abandonment so long as no other homestead is acquired and there remains at all times an intention to return and again occupy the property as the family residence." *Parks v. Buckeye Ret. Co., L.L.C. (In re Parks)*, 2006 U.S. Dist. LEXIS 38383, at *11 (S.D. Tex. June 9, 2006). While the debtor acquired a new residence when he moved to Austin, he did not thereby acquire a new homestead. As stated by the Texas Court of appeals in *West v. Austin Nat'l Bank*:

> A person may refer to his place of abode as 'home' even though he merely rents the premises and is not entitled to claim a homestead. Further, as our Supreme Court has said, 'the acquiring of a new home is not always the acquiring of a new homestead, and one does not necessarily abandon a homestead by merely moving his home.' *Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960, 963 (1943). It is the acquisition of a new homestead, not merely the acquisition of a new home, which operates as an abandonment of homestead rights.

427 S.W.2d 906, 912 (Tex. Civ. App.--San Antonio 1968, writ ref'd n.r.e.). The evidence showed that the debtor moved to Austin to construct a spec home. He intended to live in Austin only until completion of this home. After problems arose with construction and financing, and after the debtor himself began to suffer serious financial set-backs, these work obligations and financing restrictions forced him to remain in Austin. Additionally, the debtor was recently involved in a car accident which further hindered his ability to return to Aransas County. In short, the objectors failed to establish that the debtor left the Aransas property with no intention of ever returning.

For the reasons stated, the court concludes that the objections to exemptions should be sustained in part and denied in part. The noncontiguous eastern tracts do not qualify as homestead under Texas law. The western tract does qualify as homestead, and the objecting party has failed to put on sufficient evidence to establish abandonment of that homestead. Further, the court finds that the tracts in question are rural homestead, within the meaning of the Texas Constitution and the implementing statutory language in the Texas Property Code.

The debtor is directed to prepare a form of order consistent with this opinion.

###